We will call our next case, which is United States v. Kesting. If I may approach, Your Honor. Yes, and speak into the microphone, please. I will. Your Honor, may it please the Court. Luis Ortiz, Federal Defender from the District of Delaware, representing Mr. Kesting today. We are here to address. Do you reserve any time? Yes, I would like to reserve two, probably two minutes for rebuttal. Two minutes. All right. Thank you. We are here, as the Court knows, we're talking about these conditions of supervised release. And I submit that Mr. Kesting is not Mr. Thielman. And he's a very different person, I hope the Courts have seen in the filings. Additionally, one of the things the Court seems to have been doing, if you look at the record of all the defendants, is trying to create a consistency. But in so doing, people like Mr. Kesting get caught up in that. So the same conditions for him were imposed, though they may not really be appropriate, and certainly not under the directives that were given by Sections 18 U.S.C. 3583 and 3553A, where we're not supposed to, the specific section that controls these specific conditions tells us we're not supposed to impose a greater deprivation of liberty than absolutely necessary. And as the whole body of cases that I'm sure Your Honor has looked at, as I have for many hours, also tells us that Court either must address those specifically when talking about the condition, or the record must be clear. It must be clear today that those conditions should have been imposed. And certainly in Mr. Kesting's case, that was not the case. And Loy tells us we should not flounder in the zone of speculation. There must be a sufficient record below. A condition that restricts fundamental rights must be narrowly tailored and directly related to deterring the defendant before the court and protect the public. And that is not the case in Mr. Kesting's case. And if we go through each condition, I will at this point. First we talk about ---- Why aren't objections made at the time of sentencing? That's a good point. So we're here on plain error, but if you look at Volcker, which the government cites, but I found it unusual because Volcker is very favorable to Mr. Kesting in this position. I mean, I'm looking at it from a district judge's perspective. Absolutely. And in 15 years of sentencing, I don't know if I've ever had anybody object to a condition of supervised release. Therein lies the problem. The attorney who was handling this probably, you know, did not at the time realize, I need to make it so it becomes this type of review versus plain error. And you see that throughout the body of case law. Why is it error? Well, it's error because the court did not, in imposing the condition, follow the statutory requirements as well as the case requirements. They established a record as to why. These are very severe restrictions. And additionally ---- This is the gentleman that had the eight-year-old girl. No, no, no, not at all. Mr. Kesting is, to review the facts, Mr. Kesting is one of the people that Mr. Thielman preyed upon. Yeah. And he's homosexual, and they had a sexual relationship. As part of their relationship, Mr. Thielman started sending him child porn, which when the police arrested Mr. Kesting, he'd already deleted. But he had received it. He didn't trade it with anyone. He never exchanged, never went out on the Internet seeking other children. And even if, even though technically, and this is, the law says you can't be attracted to people under 18, but he has no, there's no, he has no attraction, even in his e-mails, to people that are prepubescent. What he might have been looking at is he's 25 for younger men. The record isn't totally clear on that, but there's, even in these conversations which are fantasy on these chat rooms, he's clearly looking for, not looking for children. There's no indication of that ever in this record. So Judge Robinson didn't individualize the conditions as to him or indicate how this deprivation of liberty was necessary. That is correct. And these are very severe restrictions. Turning to the porn, because I heard discussion of that, Lloyd is right. If you look at Volcker, it cites Lloyd, this Court's ruling, and then finds that prohibition on pornography no different than the statutory definition. And this statutory definition, I point out, is meant for minors. So it's meant to protect child porn cases, but the statute would now apply to everything, which the judge did in this case, to books, art, everything. It's everything. It's TV shows. It's HBO. It's at the art museum. And that's what Volcker deals with. This is just too all-encompassing. And if the Court hasn't established a record as to why Mr. Kesting, who doesn't appear truly interested, may be confused sexually, but is not really showing indication in prepubescent children, is not predatory. How about the computer? The computer. You mean the whole defense conduct happened because he was in a chat room or whatever with the ailment on the computer. A point well taken, and that's where we turn to cases such as Freeman and Volcker, which the United States version of Volcker, which in this Court said, you have to narrowly tailor that. This individual did not act as in the case the government has cited, which just if you give me a moment, is Crandon, where the individual targeted a minor on the computer, then met with them, had sex, and took pornographic photos. He's a predator. Mr. Thuman, Mike, the Court found, at least below, that he was a predator. The Court found specifically in this case, essentially alluded to that Mike Klein is not a predator. But isn't a computer condition related and sufficiently related to an offense where someone has received and possessed child pornography in order to, via the computer, in order to impose that condition? Your Honor, there are issues, and we're not saying there shouldn't be computer restrictions. That's not the issue. He should be barred from going to pornographic sites. But his problem is he didn't go to pornographic sites. He received pornography from other people, so pornographic sites isn't going to resolve it. This is exactly what the Court recently confronted in Freeman and Volcker. But we've addressed this, and as Your Honor, you've recently addressed it in an opinion which I have just been made aware of. We have to narrowly tailor. In Freeman, the individual had a prior history of sexual problems. His psychologist found that 15 years earlier he has a great risk of reoffending and had priors, two priors. Mike Klein stands before the Court having no priors, no predatory nature, had deleted the porn that he did receive, he deleted. And to bar him from what will be, as was pointed out by counsel before, it is very likely that the computer is going to become closer and closer to having a phone, so to bar him at this level. Although it's a five-year restriction, correct? As in Freeman, as in Freeman, which was a five-year restriction for a gentleman who had a prior history, who had a record of a possibility of reoffending, some pedophilic tendencies, and had engaged in much worse conduct than my client. Mr. Ortiz, forgive me, but from what you have said so far, one would think that he was completely divorced from the element of being interested in young people, children, right? And yet I just went back and flipped through the government's brief again as to what they claimed that he did. And he had pleaded guilty, as I recall. Yeah, he wasn't submitted to a jury. And I have a problem with the fact that he doesn't, he's not attracted to young people in a sexual manner. Now, he may have other problems, but, and he deleted almost all of his chat talks, right? So that the government had to get it from the hard disk. Yes, that's correct. I just have the feeling, after reading this, that he is nowhere near as implicated as Mr. Tileman was, but that he had an active interest in the very same things that Mr. Tileman did. Why would he want him to send, why would Mr. Kesting want Mr. Tileman to send him pictures of young people in stages of undress or in stages of sexual explicit actions? Why would he want that? There's two parts to that. He did not want, the record at least, 51% by preponderance, would be that he did not want any child-child pornography. That he may have been interested in, these are homosexual men, very young. He may have been interested in younger men, 18, 19, whatever that area would be. 16, 17. Or a 13-year-old. 13. That's why I'm, it's, if you really look at the totality of the record here and what his statement was afterwards, that he would have accepted child pornography, which he did not want, and deleted, in order to carry on their sexual relationship. You have to remember that Mr. Tileman was having a relationship, actually, with my client. And as part of their building up to meeting, Mr. Tileman would often initiate this. Well, why don't you, would you want to look at these six and seven? And many of the responses, if you look closely, by my client are, how about pushing the age upper, closer to his age? Now, I can't get into their heads as to what, how they were going back and forth to ultimately meeting to then engage in a separate relationship. But it appears to me, if you look at the totality, that Mr. Kesting doesn't have a prior history. They didn't find all these books and collections and CDs. It's when he has this, now he has, it's a courtship in some ways between Mr. Tileman. He doesn't know about Mr. Tileman's seven other courtships, of course, but he's having this courtship. He's pushing the children. My client's saying, well, I'd like to see, and his ages are higher. And I think that's consistent in the record. At any rate, the record is not developed enough for this restrictive of a restriction that we have here. All right. Thank you. We reserve time for rebuttal. Yeah, thank you. Thank you. Edmund Folgate. That's an interesting theory we've just heard, Mr. Falgowski, that your friend has just expounded, that he wasn't interested in children at all, that he just did this so that he could engage Mr. Yes, and that weaves into my argument. And I will address that, Your Honor. This particular, casting is not Tileman. Clearly, he is not casting, and casting is not. And that's reflected in the number of months that they were sentenced. However, the court, when imposing special conditions of probation or supervision, doesn't look necessarily to the jail time or the severity of the sentence. They look to the protection of the public, and they look to the rehabilitation of the defendant, and they make sure that the defendant doesn't reoffend. It's on a case-by-case basis. Well, do we know that Judge Robinson did engage in a case-by-case inquiry here, and that all three of these conditions were tailored by her to assure no more deprivation of liberty than necessary with respect to this particular defendant? In this instance, there was no objection by the defendant. In McKinney, there was an objection, and there was a long dialogue and long argument, both in papers and also before the court when we got to sentencing. In this case, there was no objection, and so the issue was not highlighted for the court to get into. Now, the court can, and this court can find that the conditions are appropriate, even if the judge didn't address them or the attorneys didn't address them, the court can find that the conditions are appropriate. Why is the condition prohibiting Mr. Kesting from visiting or living in a residence where children are present without third-party notification or court approval reasonable in this case? There is a viable basis in the record. Although Judge Robinson didn't expressly address it, there's a viable basis in the record, and I submit that that is within the findings of Dr. Turner. Prior to sentencing, the defense had Kesting examined by Dr. Turner, and to answer Your Honor's question, Dr. Turner said that the defendant clearly, his word was clearly, he clearly has pedophile fantasies. Dr. Turner says, but the defendant doesn't admit to those fantasies. He doesn't own the behavior. He doesn't own those fantasies. And because, and Dr. Turner said, and because the defendant didn't own those fantasies and behaviors, that the defendant was unable to determine his arousal patterns. Dr. Turner also said that because he doesn't admit this, I'm unable to determine the defendant's Kesting's arousal patterns, and what fuels his sexual attraction. Dr. Turner said that for counseling purposes, it was going, for treatment purposes, it was going to be important for Kesting to accept, to own his behavior, and to own these fantasies, making it a guarded, at best, a prognosis for treatment for Mr. Kesting. But clearly, Dr. Turner said that Kesting did have pedophile fantasies, that he had that interest. Well, that would address, then, the resident's restriction with respect to children. What about the computer one, though? That's the one that bothers me. All right. Now, on the computer, this was a five-year, not a lifetime ban. That's right. And it wasn't a ban on all computers, including those which are in cars and cashier registers. Personal computers. This was on personal computers. Right. And there was approval for Internet, so that the defendant could use the Internet with the permission of the probation officer. But in this case, the difference is … What does he do for a living, for instance? Kesting was a … I mean, if he's a biologist or endocrinologist or something, it may be a real problem. The pre-sentence report explains that his name on the Internet was Pullboy, because he made poles. He was a construction worker, and he excavated and dug poles. That's what he did for a living. Now, the difference between Kesting's case and the case of Freeman, and Freeman, he merely went onto the Internet and downloaded … I say merely, but he went onto the Internet and he downloaded child pornography from websites. What Kesting had done, by comparison, was he had used mechanisms of Internet communications, which is the language that was used by Judge Sloviter in McKinney. In that opinion, Judge Sloviter said that it was appropriate for the court to order, for Judge Robinson to order that he not have access to a computer, because there was a viable basis in the record in that the defendant used, McKinney used, mechanisms of Internet communications. And they included webcam … I'm sorry. They included … Well, they did. They included webcam transmissions. They included online chats, which are real-time communications, as opposed to … I take it a cell phone with a texting capability, that would be a personal computer. If that cell phone had Internet … Internet access. Internet access and capabilities, because it could download the child porn. And the government argues that, in this case, that because he used those mechanisms of interstate communications, that it would be … that it's viable for the court in order to order that condition. Now … Picking up on what Judge Vonesky just asked you, is it possible for the probation officer to enforce the restriction about personal computers? If a personal computer is something like an iPod or a cell phone that can transmit text and that sort of thing, how in the world can this ever be enforced? Or don't you … Aren't you concerned with that? Well, no. I mean, obviously, it must be enforced, but it's sort of like the court orders as a condition of supervision that you have no contact with your co-defendants. No contact with known felons. Okay. And the court has a difficult time enforcing that one, but that doesn't mean that it won't be ordered. Yeah. Now, in this case, as to sexually explicit material, and also Your Honor asked about, you know, about the condition of his residence. One of the videos that Kesting had on his computer that was erased, and his computer was only seized four weeks after Tillman was arrested, and we don't know when those images and those videos … So you don't know when forensically you couldn't determine it? I mean, or did you try to determine it? Forensic officers could not … I was advised they could not give me a date as to when it had been deleted. Okay. But one of the videos that he had on there was a video that said, the title to it was Danny, 6-year-old and his 10-year-old brother, and referencing a sex act, which implies incest, which I submit is all the more reason to impose a condition that he not have in his residence children. Now, as to the sexually explicit material, the government submits the argument is this, that this is the viable basis to make sure that the defendant does not have access to sexually explicit material. He doesn't admit that he has pedophile fantasies. Dr. Turner indicates that that's a problem for treatment, and it's also a problem for even the doctor to be able to determine what testings, what his arousal patterns are. But this condition could be violated by watching 10 o'clock television. I submit that's not correct, Your Honor. I mean, when you turn to the statute, it talks about masturbation and other things that, you know, late night TV or magazines. But what the description says. After all, we did have a 916th of a second showing of Janet Jackson's breast, if you recall. Right, but even that would not qualify, because that is not the lascivious exhibition, and that's why it's so good that we have this definition 2256, because Janet Jackson, that would not constitute conduct under 2256, because it is not lascivious. I don't know. It's not the lascivious. It's not a sex act. Well, but you're at your risk. You should have been arguing that before the Supreme Court, before their remand. Okay, but it's the lascivious exhibition of the genitals or pubic area. The breast is not the genitals. It's not the pubic area. It's also the writings that describe it. But it's also. Not only pictures. Right, it also. It's that material, even writings. It's writings which depict, which it's depicting or describing. Yeah. And so it's depicting or describing. Now, when one goes to a library, there may be some reference to a person's naked, but that is not a description, a lascivious. How does one know? How does one know? Isn't that the problem? That in trying to describe this. I mean, you have so many cases where we've attempted to describe. I can't think of any that really pass muster very well. But your point is that when you look at Michelangelo's David, you don't get the same impression as when you look at Hussler's centerfold. Exactly, because Michelangelo's art. If one goes into a museum, one can expect you are not going to find the shameful, the decadent, the depraved, which is what that means. You're not going to see the depraved depiction of the genitalia. I see my time is done. Yes, it is. If there's any questions. Thank you. Thank you very much. We'll hear from Mr. Ortiz on rebuttal. Your Honor, I would like to address that last point. I don't read the statute like that. I have it in front of me. The last section is the only one that involves a lascivious portion. The rest involves bestiality, and it has to include all of that. It's all of this conduct in written art form, in writing, as per the order and conditions. Well, if he's only interested in adults, as you've taken great pains to persuade us, why shouldn't he be excluded from seeing explicit pictures in the soft porn and the porn magazines, et cetera? Your Honor, I'm not sure that if you fashion a condition that narrow, that that would be a problem. The problem is the condition we have, which has been repeatedly addressed in numerous opinions by this Court, that this is not enforceable, and you are on no notice. And when you expand it to TV and writings and art, it's all in the order. It's a serious due process problem. And to suggest that, oh, it's just Michelangelo, we won't violate you, that's not the position the defendant can be in because you have no notice as to what is a violation of this very broad statute, which was intended for children, that it does not fix the problem. The other item, the government was focusing on this webcam issue, and I direct the Court to its other opinion, like Freeman, in Volcker, where the individual had his child on a webcam. And the Court found that this condition, the same one similar to Freeman, the same problem we have today. And really what I would like to refocus the Court on is what we began with, which is that we are directed by a statute, and these are special conditions, and they must be narrowly tailored. We have to have a record of that, which we don't here. And we cannot deprive liberty in any greater – we must make every effort to limit violations of liberty and the case law surrounding this, especially when we're dealing with constitutional First Amendment rights, employment, family, and the record does not support these conditions. And though it wasn't addressed briefly, if there is any issue as to the posture where we didn't technically object but we've appealed, Volcker has a very – the very language the government discussed as to plain error, it walks through it. Plain error is clear and obvious, and Volcker is a favorable opinion to the defendant. And it finds that at every step, even though it wasn't objected to, they're dealing with the minor and that, the other was not plain error. But even when they discuss plain error, it's clear that in the area of supervised release conditions that when you walk through it, that because it involves – it will lead to violation. That's a problem. It is – it's a violation of law because you failed to properly consider 3550A.